## Case No. 518.

### The ARGONAUT.

### [Blatchf. Pr. Cas. 62.][1]

District Court, S. D. New York. Oct., 1861.

PRIZE—NEUTRAL PROPERTY—BLOCKADED PORT.

1. Vessel and cargo restored as neutral property, on a lawful voyage, but without costs against the captors, there having been probable cause for the arrest, the vessel having attempted to enter a blockaded port to obtain the necessary supplies.

2. An excuse of that kind is looked upon with distrust by prize court.

In admiralty.

BETTS, District Judge. This cause was submitted to the decision of the court by counsel, on the pleadings and proofs, and a brief oral statement of the points in controversy.

The Argonaut was captured by the United States war steamer Susquehanna, September 13, 1861, off Hatteras inlet, and sent into this port in charge of a prize crew, and was libelled by the United States attorney as prize of war. The claimants filed separate

[1][Reported by Samuel Blatchford, Esq.]

answers and claims to, the suit, each alleging that they are British subjects resident in Nova Scotia, and that the vessel and cargo are owned by them and both are British property, and neither is subject to arrest or condemnation as prize of war; and they invoke their own affidavits, appended to the proceedings and the evidence taken in preparatorio, in support of their defences.

The proofs show that the vessel and cargo were neutral property and it is not made a point of contestation by the libellants, since the proofs are in, that the voyage was honest and fair in its inception, and that neither vessel nor cargo are, upon the facts before the court, subject to confiscation; but, on the part of the United States, it is insisted that the direction of the vessel, and her apparent purpose when she was arrested, denoted an intention to enter the blockaded port, so far, at least, as to well warrant her arrest and to impose upon her the necessity of establishing the justifiableness and innocency of her proceedings. On the other side, it is urged that she deviated from the regular course of her voyage for necessary causes, and stands, on that account, exonerated from all blame and all reasonable grounds of suspicion.

The evidence given by the master, mate, and seamen of the captured vessel, on the preparatory examination, is entirely consistent and clear, that the vessel was laden and despatched at Nova Scotia, on a voyage to Key West, and was manned by a British crew and laden with a British cargo, not contraband, and that the voyage was faithfully pursued until, in its regular course, the vessel became short of water for the crew, and also of burning fluid to supply her lamps, a portion of the fluid, shipped in quantity sufficient for the purpose, being found, when at sea, defective in quality and incapable of being used as a light, so that the vessel could not be safely navigated at night. The vessel deviated from the true course of her voyage about fifteen miles, and attempted to obtain from other vessels the supply needed for her wants, and, in so doing, was seized by the United States vessel-of-war.

I perceive no reason to doubt, on all the facts and circumstances in proof, that the master of the vessel and her supercargo acted under an honest conviction that the necessities of the vessel required she should obtain the supplies lost to her in order to continue the voyage safely, and were governed in their proceedings by that motive, and not by an intent to violate the blockade of the port which she sought to enter and near which she was seized. Although the condition of the vessel relieves her from confiscation because of the effort of the master to enter a blockaded port for the purpose of relieving her necessities, yet excuses of that kind are looked upon with marked distrust by prize courts, who scan them cautiously. Lord Stowell holds that nothing but a high necessity justifies an attempt to enter a blockaded port, (The Hurtige Hane, 2 C. Rob. Adm. 124,) and that slight and plausible excuses will not be listened to, (The Fortuna, 5 C. Rob. Adm. 28,) and the want of provisions is referred to as a simulated reason often set up in excuse of the offence. Still, when the necessity is actual and is the motive which governs the conduct of the master the vessel will be exonerated from the severe penalty which the act of breaking a blockade incurs.

I think the proofs fairly make out such a case for the vessel in this instance, and that, accordingly, the vessel and cargo should be restored to the claimants; but I think there was probable cause for arresting the vessel in an attempt to make a blockaded port and sending her in to make good before the proper court the justification she alleged for her proceedings. The judgment of the court, accordingly, is that the vessel and cargo be restored to the claimants, without costs against the captors.